[Civil No. 1351.   Filed May 6, 1914.]

[140 Pac. 501.]

WILLIAM COWAN, Plaintiff in Error, v. FRANK RAMSEY, LULU RAMSEY and PETER JOHNSON, Defendants in Error.

BILLS AND NOTES—ACCOMMODATION MAKER—EXTENSION OF TIME OF PAYMENT—EFFECT.—Under negotiable instruments act (Civ. Code 1913, pars. 4174, 4205, 4264, 4265, 4336), defining an accommodation maker and specifying the ways in which a negotiable instrument may be discharged, an accommodation maker is not discharged by an extension of the time of payment, pursuant to an agreement, made without his knowledge, by the holder and the principal maker.

[As to rights and liabilities of makers and indorsers of accommodation paper, see note in 31 Am. St. Rep. 745.]

WRIT OF ERROR from the Superior Court of the County of Cochise.   Fred Sutter, Judge.   Reversed and remanded.

The facts are stated in the opinion.

Mr. O. Gibson, for Plaintiff in Error.

Mr. Cleon T. Knapp, for Defendants in Error.

ROSS, J.—The plaintiff in error sued the defendants in error to recover upon the following promissory note:

"4000.00.                 Douglas, Arizona, Jan. 30, 1908.

"Twelve months after date, for value received, we promise to pay to the order of William Cowan four thousand no/100

dollars at Bank of Douglas, Douglas, Arizona, with interest thereon, from date until paid, at the rate of 12 per cent. per annum payable monthly; the said interest, if not so paid, to be added to and become a part of the principal, and to bear the same rate of interest, and in case suit or action is instituted to collect this note, or any portion thereof, we promise to pay, besides the costs and disbursements allowed by law, such additional sum as the court may adjudge reasonable as attorney's fees in such suit or action.

> "FRANK RAMSEY.
> "Mrs. FRANK RAMSEY.
> "PETER JOHNSON."

The defendant answered that he received no part of the money for which the note was given, and that he "only signed and executed the said note as surety, and not as a principal maker thereof, all of which was at the time then and there, and ever since has been, known to plaintiff." That the plaintiff, the holder of note, without the knowledge or consent of defendant, had on June 28, 1911, after note was due and payable, bound himself by agreement with the principals on said note, Frank Ramsey and Lula Ramsey, to extend the time of payment, and had by such agreement postponed his right to enforce the payment of said instrument. There was a trial to the court, with judgment for defendant.

The question is as to whether the matters set up by defendant constitute a defense. In other words, is the defense of extension of time of payment by the holder of a negotiable promissory note to the principal available to an accommodation comaker when the extension is granted without his consent, under the negotiable instrument act? Title 36, Ariz. Rev. Stats. 1913.

Under the law-merchant or common law affecting commercial paper, "a definite and binding agreement between the holder and the maker or acceptor of commercial paper extending the time of payment will discharge the surety thereon, including a joint maker who is in fact a surety or accommodation maker, to the knowledge of the holder, . . . unless he consents to the extension, or is estopped, or waives the right to set up a discharge by a binding agreement after the extension." 7 Cyc. 882; *McGlassen* v. *Tyrrell*, 5 Ariz. 51, 44 Pac. 1088. The defendant's answer, therefore, is a

good defense, unless the common-law rule has been changed or supplanted by statute. Paragraph 4174 defines "an accommodation party" as "one who has signed the instrument as maker, drawer, acceptor or indorser without receiving value therefor and for the purpose of lending his name to some other person. Such a person is liable on the instrument to a holder for value, notwithstanding such holder, at the time of taking the instrument, knew him to be only an accommodation party." Paragraph 4205 is: "The maker of a negotiable instrument by making it engages that he will pay it according to its tenor; and admits the existence of the payee and his then capacity to indorse." Paragraph 4336 is: "The person 'primarily' liable on an instrument is the person who by the terms of the instrument is absolutely required to pay the same. All other parties are 'secondarily' liable." Paragraph 4264 provides how primary parties may discharge negotiable instruments in these words: "A negotiable instrument is discharged: (1) By payment in due course by or on behalf of the principal debtor. (2) By payment in due course by the party accommodated, where the instrument is made or accepted for accommodation. (3) By the intentional cancellation thereof by the holder. (4) By any other act which will discharge a simple contract for the payment of money. (5) When the principal debtor becomes the holder of the instrument at or after maturity in his own right." And paragraph 4265 provides how secondary parties may discharge negotiable instruments, as follows: "A person secondarily liable on the instrument is discharged: (1) By any act which discharges the instrument. (2) By the intentional cancellation of his signature by the holder. (3) By the discharge of a prior party. (4) By a valid tender of payment made by a prior party. (5) By a release of the principal debtor, unless the holder's right of recourse against the party secondarily liable is expressly reserved. (6) By any agreement binding upon the holder to extend the time of payment, or to postpone the holder's right to enforce the instrument, unless made with the assent of the party secondarily liable, or unless the right of recourse against such party is expressly reserved."

The negotiable instrument law, as found in our statutes, has been adopted by many of the states with a view of securing uniformity and "to remove the confusion or uncertainty

which might arise from conflict of statutes or judicial decisions amongst the several states and to make plain, certain and general the controlling rules of law.'' *Union Trust Co.* v. *McGinty*, 212 Mass. 205, Ann. Cas. 1913C, 525, 98 N. E. 679. In this case the court had before it the identical question that we have, and in discussing the act, and like sections thereof as we have quoted, said: ''Approaching the act from this point of view (uniformity), it is apparent that no relation of principal and surety is established or contemplated by any of its sections. It determines the liability of the various parties to the negotiable instrument on the basis of that which is written on the paper. The obligation of all makers, whether for accommodation or otherwise, is to pay to the holder for value according to the terms of the bill or note. Their obligation is primary and absolute. Sections 77, 208. The act makes no provision for the proof of another and different relation than that expressly undertaken and defined by the tenor of the instrument signed. The fact that one is an accommodation maker gives rise to a duty no less or greater or different to the holder for value than that imposed upon a maker who received value. This is expressly provided by the act, even though such holder knew at the time that the maker was an accommodation maker. Section 46. The act further provides in definite terms that the instrument and hence one primarily liable is discharged in one of five different ways (section 136) ; that is, by payment by the principal debtor, or by the party accommodated, by cancellation, by any other act which would discharge a simple contract, and by the principal debtor becoming the owner at or after maturity. There is no mention here of a discharge of an accommodation party by extension of time. But among the ways in which a party secondarily liable may be discharged is (section 137) an agreement by the holder to extend the time of payment or to postpone his right to enforce the instrument 'unless made with the assent of the party secondarily liable or unless the right of recourse against such party is expressly reserved.' Whatever force might attach to the enumeration of ways in which the instrument and consequently parties primarily liable might be discharged, if this provision stood alone, the inference arising from the omission of extension of time from such enumeration and its inclusion among the ways in which persons second-

arily liable may be discharged, is almost irresistible that the legislature did not intend that persons primarily liable should be discharged in that manner. These two sections standing side by side, both dealing with the subject of discharge of liabilities of parties, the one mentioning, the other. not mentioning, extension of time by the holder as a means of working discharge of liability, cannot be treated as accidental or without significance. It is strong proof of a legislative purpose to change the pre-existing law of the commonwealth. These considerations outweigh the argument adduced from the fact that the 'instrument' rather than 'parties primarily . liable' is the language used in section 136 and from the phrase of clause 4, to the effect that the instrument may be discharged 'by any other act which will discharge a simple contract.' The act establishes a liability on the part of an accommodation maker, which is not affected by an extension of time given by the holder to any other party to the note, even though, as between such party and the accommodation maker, a different relation may subsist in fact from that appearing on the face of the paper. The result is to render somewhat more rigid the rights of the parties as set forth in the written instrument, and, so far as the holder is concerned, to establish liability to him upon a firm basis, not easily shaken by parol evidence.''

The rule expressed in the above quotation is that adopted by all the courts that have had occasion to pass upon the negotiable instrument law (*Vanderford* v. *Farmers' etc. Nat. Bank,* 105 Md. 164, 10 L. R. A., N. S., 129, 66 Atl. 47; *Cellers* v. *Meachem,* 49 Or. 186, 10 L. R. A., N. S., 133, 13 Ann. Cas. 997, 89 Pac. 426; *Wolstenholme* v. *Smith,* 34 Utah, 300, 97 Pac. 329; *Bradley Engineering etc. Co.* v. *Heyburn,* 56 Wash. 628, 134 Am. St. Rep. 1127, 106 Pac. 170; *National Citizens' Bank* v. *Toplitz,* 81 App. Div. 593, 81 N. Y. Supp. 422; affirmed on another ground, 178 N. Y. 464, 71 N. E. 1; *Rich-. ards* v. *Market Exch. Bank Co.,* 81 Ohio St. 348, 26 L. R. A., N. S., 99, 90 N. E. 1000; *Fritts* v. *Kirchdorfer,* 136 Ky. 643, 650, 124 S. W. 882), except the lone case of *Fullerton Lumber Co.* v. *Snouffer,* 139 Iowa, 176, 117 N. W. 50. In this case it was held that, as between the immediate parties to the instrument, an extension of time by the holder, without the consent of the accommodation maker, would discharge the latter, on the theory that in such case the payee was not a

holder in due course.   It seems to us that such a construction of the statute does not comport with either its letter or spirit. The other construction appeals to us as the correct one; besides it has the sanction of the great majority of the courts, and, by following it, uniformity of decision is more nearly secured and the object of the act accomplished.

We think the answer failed to state a defense.

The judgment is reversed, and the cause is remanded for further proceedings not inconsistent with this opinion.

FRANKLIN, C. J., and CUNNINGHAM, J., concur.