442 P.2d 555

**SECURITY INSURANCE COMPANY OF NEW HAVEN, a corporation, Appellant,**

**v.**

**JOHNS–MANVILLE SALES CORPORATION, INC., a Delaware corporation; Harold G. Gustafson and Edward J. Haseman, Appellees.**

**No. I CA–CIV 467.**

Court of Appeals of Arizona.

June 24, 1968.

Review Denied Oct. 8, 1968.

Lewis, Roca, Beauchamp & Linton, by John P. Frank and Gerald K. Smith, Phoenix, for appellant.

Beer & Kalyna, by O. W. Kalyna and William F. Lee, Phoenix, for appellees Gustafson and Haseman.

D. L. GREER, Superior Court Judge.

This appeal involves an interesting but esoteric aspect of the law, resulting from a controversy between a Bonding Company, which became a Surety on a defaulting Contractor's Bond, and two Guarantors, who guaranteed the contractor's obligation. The question to be determined is whether the surety having paid the obligation is entitled to reimbursement or contribution.

The facts essential to the decision are:

Appellees, Gustafson and Haseman (hereinafter referred to as "Guarantors") were the sole stockholders in Twin Butte Contractor, Inc., which was engaged in constructing water and sewer lines. In order to secure credit from Johns-Manville Sales Corporation, Inc., the Guarantors in January, 1960, executed and delivered to Johns-Manville a guarantee (which was made cancellable in writing) whereby the Guarantors guaranteed "the prompt payment of any and all indebtedness now due or hereafter to become due to the said Johns-Manville from the said Twin Butte Corporation, Inc., for goods heretofore purchased * * * or which may be purchased in the future."

In June of 1961 Twin Butte entered into a contract to supply and install water lines in the Town of Holbrook. Security Insurance Company of New Haven, Appellant herein (hereinafter referred to as the "Surety") executed, along with Twin

Butte, a material and labor bond, providing in part as follows:

"KNOW ALL MEN BY THESE PRESENTS:

"That TWIN BUTTE CONTRACTORS INC. of TEMPE, ARIZONA, as Principal, hereinafter called PRINCIPAL, and the SECURITY INSURANCE COMPANY OF NEW HAVEN, as Surety, hereinafter called SURETY, are held and firmly bound unto: TOWN OF HOLBROOK of HOLBROOK, ARIZONA, as Obligee, hereinafter called OWNER, for the use and benefit of claimants as hereinbelow defined, in the amount of THIRTY SIX THOUSAND, SEVEN HUNDRED EIGHTY NINE & 83/100 DOLLARS ($36,789.83), for the payment whereof Principal and Surety bind themselves, their heirs, executors, administrators, successors and assigns, jointly and severally, firmly by these presents.

"WHEREAS, Principal has by written agreement dated JUNE 30, 1961, entered into a contract with Owner for INSTALLATION OF WATER IMPROVEMENT in accordance with drawings and specifications prepared by A. E. FERGUSON AND ASSOCIATES, which contract is by reference made a part hereof, and is hereinafter referred to as the CONTRACT.

"NOW, THEREFOR, THE CONDITION OF THIS OBLIGATION is such that if the Principal shall promptly make payment to all claimants as hereinafter defined, for all labor and material used or reasonably required for use in the performance of the Contract, then this obligation shall be void; otherwise it shall remain in full force and effect, subject, however, to the following conditions:

\* \* \* \* \* \*

"2. The above named Principal and Surety hereby jointly and severally agree with the Owner that every claimant as herein defined, who has not been paid in full before the expiration of a period of ninety (90) days after the date on which the last of such claimant's work or labor was done or performed, or materials were furnished by such claimant, may sue on this bond for the use of such claimant in the name of the Owner, prosecute the suit to final judgment for such sum or sums as may be justly due claimant, and have execution thereon, provided, however, that the Owner shall not be liable for the payment of any costs or expenses of any such suit.

\* \* \* \* \* \*

"Signed and sealed this 7th day of July, 1961.

TWIN BUTTE CONTRACTORS, INC, /s/ D. S. Fago
Principal

SECURITY INSURANCE COMPANY OF NEW HAVEN
by: /s/ John A. Henderson
Attorney-in-fact

/s/ Joe M. Smith

Resident Agent—State of Arizona"

This bond was signed by both Twin Butte and the Surety. However, when the Surety executed the bond it had no knowledge of the Guarantor's guarantee, nor did it rely on such guarantee as an inducement to write said bond.

Prior to the Holbrook contract, and in May of 1961, the Guarantors sold their entire interest in Twin Butte and ceased to manage or derive any benefit from its operation. Johns-Manville was notified of the sale and Guarantors satisfied Twin Butte's then existing indebtedness to Johns-Manville. When Twin Butte defaulted in the payment for materials on the Holbrook project, Johns-Manville brought suit against Twin Butte and the Surety. The Surety brought the Guarantors in as third-party defendants, seeking reimbursement for all funds found due and owing by Johns-Manville or for contribution. Twin Butte was insolvent at the time the complaint was filed. The trial court found for the Guarantors and awarded Johns-Manville judgment against the Surety in the sum of $28,682.69. The Surety satis-

fied Johns-Manville's Judgment after all briefs were filed in this Court and the only issue left to be determined is whether the Surety is entitled to reimbursement or contribution from the Guarantors.

At the outset we point out that while we have used the term "Guarantors" and "Surety" for ease in designating the parties to the Appeal, the Court looks to the obligation assumed in a particular case, rather than the distribution of labels, to determine the liabilities of the parties to the law suit.

The Appellant argues in its brief that the Re-Statement of Law of Sureties is applicable in the instant case, since our Supreme Court has never passed upon the question involved here. With this we do not agree. In Van Marel v. Watson, 28 Ariz. 32, page 38, 235 P. 144, page 146 (1925), our Supreme Court held:

"The promise or undertaking of a guarantor differs from that of a surety, in that it is always to pay the debt of another, while that of the surety is to pay a debt which becomes his upon the principal's failure to pay."

From an examination of the two contracts above, it is noted that the Surety is bound by the same agreement which bound Twin Butte, while the Guarantors are bound by their own separate, independent undertaking.

■ As also stated in Howell v. Commissioner of Internal Revenue, 69 F.2d 447, at 450 (8th Circuit, 1934):

"In case of suretyship there is but one contract binding the surety and the promisor, but in the case of a guaranty there are two contracts, one binding the principal debtor, and one binding the guarantor * * *."

Our Court in the Van Marel case, supra, further stated:

"His (the guarantor's) responsibility to his guarantees, or their assigns, rests upon his guaranty, and not upon the terms of the note itself; hence he is only secondarily liable upon the latter."

Therefore, the Surety is primarily liable and the Guarantor is secondarily liable for Twin Butte's unpaid material obligations. This distinction in liability is well recognized in the case law: 38 C.J.S. Guaranty § 6, page 1136. 24 Am.Jur., Sec. 11, page 879, which states the law very well:

"The surety is a party to an original obligation which binds him as well as his principal, whereas a guarantor is not a party to such an undertaking, the contract by which he is bound being collateral to a primary or original obligation. This is the vital difference between the two contracts."

■ The only remaining question is whether a party secondarily liable is liable in contribution. In Sterns, Suretyship, Sec. 11.19, page 485, 5th Edition, 1951, the author states as follows:

"It has been held that there can be no contribution between sureties and guarantors upon the same debt."

See also Monson v. Drakeley, 40 Conn. 552, at 561, 16 Am.Rep. 74, at 78 (1873).

"A guarantor of the ability of the maker is in no sense in privity with the sureties. His undertaking is collateral to theirs and independent of it. He is not chargeable by them with contribution neither can he claim it from them."

Perhaps it is well to enunciate that the right of contribution is founded on equitable principles and will not be enforced where it will work injustice to the rights of those having equal or superior equities. 137 A.L.R. 700.

As stated in the above annotation at page 701:

"As it is otherwise expressed, where the equities of such third person in respect to the payment of the liability in question are equal or superior to those of the surety in respect of the same liability, the latter will not, by subrogation to the right of the obligee, be allowed to recover against the former. To allow him to recover under the doctrine of subrogation, something more must be

shown than that he discharged a liability for which such third person was also liable to the obligee."

See also 18 Am.Jur.2d, Sec. 65, page 96.

■ In weighing the equities, as we must in a situation of this type, we note that the Appellee, Surety, is a bonding company and is a compensated surety which was entitled to secure its bond executed on behalf of Twin Butte and on which point the record is silent. Whereas, the Guarantors sold their entire interest in Twin Butte prior to the Holbrook contract, gained absolutely nothing by the extension of credit by Johns-Manville, they derived no profit from Twin Butte's Holbrook operation and it would seem, therefore, should not be required to contribute to this Judgment.

As stated by the Supreme Court of South Dakota, in Western Surety Co. v. Walter, 44 S.D. 112, 182 N.W. 635, at page 637, 24 A.L.R. 1519 (1921):

"On what ground can it be urged that 'good conscience' requires that respondents and not appellant stand the loss flowing from the defalcation? It was appellant's business for a consideration moving to it, to enter into just such contracts of indemnity as the one given by it in this case? There is absolutely no equitable ground upon which it can be urged that defendants should pay this claim. They did not give their note for the benefit of appellant, but merely to indemnify the county against any loss from a defalcation that had already occurred, and for which the county had a right of recovery against the defaulter's estate and against appellant. * * *."

For the above and foregoing reasons the judgment of the trial Court is hereby affirmed.

CAMERON, C. J., and STEVENS, J., concur.

NOTE: Judge FRANCIS J. DONOFRIO having requested that he be relieved from consideration of this matter Judge D. L. GREER was called to sit in his stead and participate in the determination of this decision.