FAIRFIELD COUNTY TRUST COMPANY *v.* ABE
STEINBRECHER

APPELLATE DIVISION OF THE CIRCUIT COURT

FILE NO. CV 1-663-11363

Argued September 30—decided December 13, 1968

*Sidney Vogel* and *Abraham B. Beiser,* both of
Norwalk, for the appellant (defendant).

*Lawrence P. Dennin, Jr.,* of Norwalk, with whom,
on the brief, was *Harry H. Hefferan, Jr.,* of Nor-
walk, for the appellee (plaintiff).

Kosicki, J.  The plaintiff, by a complaint dated February 21, 1966, commenced this action against the defendant as endorser on a promissory note in the face amount of $5245.44.  The maker of the note was an automobile dealer known as Fairport Rambler, Inc., hereinafter referred to as Fairport. The note was endorsed by Gerald Bean, then president of Fairport, and the defendant.  Fairport had terminated its business operations in September, 1965, and was not made a party to this suit.  The answer set up three special defenses: (1) failure of consideration; (2) material alteration of the note without authority; (3) completion of blanks without authority.  The reply alleged that the plaintiff was a holder in due course and that the defendant was an accommodation endorser.

The trial court's finding, which is not subject to any material correction, and which is supported by the evidence, shows the following, in addition to the brief summation above.  Prior to the execution of the note in dispute, the defendant was an automobile dealer, operating in the New York City area, who frequently engaged in the purchase of motor vehicles from Fairport.  The plaintiff was a substantial creditor of Fairport and was concerned with the ability of Fairport to pay this indebtedness. During this period, the defendant took delivery of eight or nine used automobiles from Fairport.  At least four of the vehicles had been floor-planned by the plaintiff with Fairport, and therefore the plaintiff had title to them.  General Statutes §§ 42a-9-105 (1) (h), 42a-1-201 (37); 17 Words & Phrases, "Floor-planning."  When the plaintiff discovered that these cars were missing from Fairport's premises, it contacted Fairport and the defendant, demanding payment in the amount of $4800 due the plaintiff on these vehicles.  The defendant issued a check to Fairport for this sum, and this was de-

posited in and credited to Fairport's account in the plaintiff. Subsequently, the defendant stopped payment on the check, and Fairport's account with the plaintiff was debited in that amount. A conference followed on Fairport's premises in which Walter Loiewski, one of the plaintiff's officers, participated, together with Gerald Bean, president of Fairport, and the defendant. The parties agreed that the plaintiff would receive a promissory note for the $4800 indebtedness, with Fairport as maker and Bean and the defendant as endorsers. Loiewski informed both Bean and the defendant that he could supply no final confirmation as to all the terms until they were approved by one of his senior officers. Loiewski then produced a note form and either he or the defendant filled in a blank at the upper left-hand corner, fixing the principal amount at $4800. The amount of each monthly payment was inserted in the proper blank, in the sum of $224. There was a discussion whether the note would ultimately be payable over a period of twelve or twenty-four months.

Bean executed the note on behalf of Fairport, as its officer, and personally endorsed it. The defendant also endorsed the note during this conference. When Loiewski left with the note, the following items were still blank: town of execution, date, place of payment, equivalent in writing of the principal amount of the note, number of periodic payments, the amount of the last payment, and the date of the first payment.

Shortly thereafter, a senior officer of the plaintiff approved the loan on the basis of a twelve-month rather than a twenty-four month term and on condition that the projected interest on the $4800 loan should be "added on," so that the principal amount would include it. Upon these instructions, Loiewski, after approval of the loan, increased the face amount by altering it from $4800 to $5245.44, to in-

clude both the principal and the added interest; and he inserted words establishing the term at twelve months, payable in eleven monthly payments of $224 each, beginning with April 5, 1965, and concluding with a "balloon payment" of $2781.44 as the twelfth and final payment. The plaintiff then credited Fairport's checking account with $4800. Thereafter, the plaintiff sent a payment book to Fairport showing the balance due pursuant to the note and containing a record for the payments made. Three monthly payments were made, the last being on June 30, 1965.

On several occasions, after completion of the note, Loiewski discussed with the defendant the final terms of the note, and the defendant offered no objections to them. Following the execution of the note, at least one default notice was sent by the plaintiff to the defendant. After the third payment of $224, no further payments were made.

The court reached the following conclusions. The note in suit was duly executed and delivered by Fairport, Bean and the defendant to the plaintiff. The note was not complete when it was delivered to the plaintiff. The note was supported by a valid consideration. It was made payable to the plaintiff, and the plaintiff is still the holder of it. Even though the defendant may not have received any direct consideration for his endorsement, and endorsed the note purely as a gesture of assistance to Fairport, he is nevertheless liable to the plaintiff, since he is an accommodation endorser. When the plaintiff, acting by Loiewski, took the note in an incomplete form and thereafter completed some of the items, it knew, or should have known, that the completion might expose it to assertion of certain defenses. The plaintiff is not a holder in due course under all the circumstances. It therefore took the note subject to the risk of assertion of the defense

of "material alteration" and a determination of the merits thereof. Both Bean and the defendant, as experienced businessmen, clearly expected the plaintiff to take additional action to complete the note following its delivery to Loiewski and consented to that procedure. The subsequent changes and insertions were within the scope of the plaintiff's authorization and were made by the plaintiff in good faith and in the sincere belief that they were duly authorized. If the changes and insertions by the plaintiff had been wholly objectionable to Fairport, Bean and the defendant, Fairport would not have made any payments on account. The defendant never presented any formal protest to the plaintiff against the final terms and conditions of the completed note at his subsequent meetings or discussions with Loiewski or upon receipt of the default notice. Any alterations or insertions by the plaintiff, following the conference, were assented to, ratified and confirmed by both Bean and the defendant. The conduct of the defendant estops him from attacking the validity of the note and his liability thereon. There was no claim or proof of any fraud on the part of the plaintiff in connection with the insertions or alterations in the note. The defendant did not sustain his burden of proof, which obligated him to establish that the alterations and insertions were both "material" and "fraudulent" in order to cancel his liability. Although the plaintiff is not a holder in due course, it is nevertheless entitled to a recovery against the defendant on the note, since the defendant did not sustain the burden of proof resting on him.

Judgment was thereupon ordered for the plaintiff to recover of the defendant $4573.44, being the balance due on the note, together with interest at 6 percent from March 5, 1966, and counsel fees of $750, as authorized by the note, plus taxable costs.

In his numerous assignments of error, the defendant apparently seeks to substitute his own view of the facts and the conclusions to be drawn from them for the finding of the court. The fact that there was conflicting evidence is no reason for us to reexamine the evidence to determine the credibility of witnesses. That is the function solely of the trial court. "We do not retry facts or pass upon questions of credibility." *Faiola* v. *Faiola,* 156 Conn. 12, 15. In his brief, the defendant admits that "in large part the resolution of the case must depend on the extent of belief by the court to one contention against another." The subordinate facts found by the court must stand.

In the second part of his assignment, the defendant claims error in the admission of certain evidence consisting of checks and the note in suit, asserting that the note was inadmissible because it bore unexplained alterations on its face and that it was admitted on hearsay and irrelevant evidence offered to explain the alterations. The defendant has failed to comply with the requirements of Practice Book § 989 (4). In the absence of an exhibit setting forth the question, the objection, the answer, if any, and the exception, we cannot determine what the ruling was and whether it was erroneous. *State* v. *Plant,* 22 Conn. Sup. 436, 439, 1 Conn. Cir. Ct. 76, 79. The assignment of error did not specify what evidence was erroneously admitted. The exhibits referred to are not identified with certainty, nor is there annexed the transcript exhibit setting forth the question, the objection, the answer, if any, and the exception. We are, therefore, deprived of the necessary material to determine the correctness or error in the ruling in each instance.

The defendant, moreover, by his pleading had raised the defense of lack of consideration to him, as an endorser. The checks were properly admitted to

prove that the note was supported by a valid consideration. It appears from the evidence that Fairport had given the defendant ten postdated checks of $600 each in the early part of January, 1965, to repay a loan. Subsequently, Fairport got into financial difficulty and the checks began to be returned for insufficient funds. When the note in suit was executed, Fairport owed the defendant $4800. The defendant removed from Fairport's premises cars worth $4800. The cars had been floor-planned to the plaintiff, which held title to them. Fairport then signed the note in question, and the defendant endorsed it. In any event, the trial court did not base its decision on these checks. They are not mentioned in the finding or referred to in the memorandum of decision, which is a part of this record on appeal. Practice Book § 992. It is apparent that they would not alter the outcome of this case.

In this assignment of error, the defendant claims error in the admission of the note in evidence when it bore alterations apparent on its face and there had not been any explanation of them. The evidence shows that the trial court sustained the defendant's objection when the note was first offered. At that point Loiewski, on direct and cross-examination, explained in great detail the nature of the alterations, the knowledge of the defendant as to them, his failure to object, and the initial understanding of the parties as to latitude to be exercised by the plaintiff in completing the note and fixing all the essential terms discussed by the parties.

Before the passage of our Uniform Commercial Code, it was the rule that an alteration in the date of a negotiable instrument was material, and the instrument was avoided as to parties not assenting to the alteration. *Davis* v. *Davis,* 128 Conn. 243, 248. In that case, however, the court decided that a par-

tial erasure or mutilation was not intentional and did not constitute an alteration. In *Bailey* v. *Taylor*, 11 Conn. 531, decided more than a century before adoption of our present code, it was held, inter alia, that the mere fact of alteration after a party receives the instrument did not make the instrument void if it was shown that the alteration was made with the assent of the adverse party. The authorities cited by the defendant deal with situations which were not governed by the provisions of the Uniform Commercial Code. Thus, it was held in *Newman* v. *King*, 54 Ohio St. 273, that alteration by a payee of a note as to its date, after the note had been delivered to him, rendered the instrument void, even in the hands of an innocent indorsee for value. See also note, 44 A.L.R. 1244. The authorities cited by the defendant are not applicable to the situation before us. Although the evidence was in conflict, the court obviously believed the plaintiff's version and concluded that, although the plaintiff was not a holder in due course, the alterations, changes and insertions were made by it within the scope of the defendant's authorization and in the sincere belief that they were duly authorized, assented to, ratified and confirmed by both Bean and the defendant. The trial court was entitled to conclude that the conduct of the defendant estopped him from attacking the validity of the note and his liability thereon. See 4 Am. Jur. 2d, Alteration of Instruments, §§ 38–40.

Our statute provides that "[a]s against any person other than a subsequent holder in due course (a) alteration by the holder which is both fraudulent and material discharges any party whose contract is thereby changed unless that party assents or is precluded from asserting the defense; (b) no other alteration discharges any party and the instrument may be enforced according to its original tenor, or as to incomplete instruments according to the au-

thority given." General Statutes § 42a-3-407 (2); Uniform Commercial Code § 3-407, comment 3b; see General Statutes § 42a-3-304; Uniform Commercial Code § 3-304, comment 10. Section 42a-3-115 reads as follows: "(1) When a paper whose contents at the time of the signing show that it is intended to become an instrument is signed while still incomplete in any necessary respect it cannot be enforced until completed, but when it is completed in accordance with authority given it is effective as completed. (2) If the completion is unauthorized the rules as to material alteration provided in section 42a-3-407 apply, even though the paper was not delivered by the maker or drawer; but the burden of establishing that any completion is unauthorized is on the party so asserting." There was credible testimony that, at the meeting at which the note was signed and endorsed, the blanks were deliberately left open, subject to being filled in on terms approved by the plaintiff, and that Bean and the defendant were informed of those terms and accepted them. The trial court correctly concluded that the alteration and completion of the note by the plaintiff were assented to, ratified and confirmed by the defendant so that he is disqualified from attacking the validity of the note. General Statutes § 42a-3-407 (2) (a); Uniform Commercial Code § 3-407, comments 3b, 3c. The court committed no error in its conclusion that the defendant had failed to sustain his statutory burden of proving, under § 42a-3-115 (2), that the alterations and additions were both fraudulent and material. See Uniform Commercial Code § 3-115, comment 6.

The defendant further contends that there was no consideration moving to him because he did not receive actual money for his endorsement. Clearly, that is not the law. Even though he may have attached a condition that Fairport be allowed to continue in business, in consideration for his endorse-

ment, that condition had been fulfilled because the plaintiff continued to finance Fairport for several months thereafter until its business became a hopeless, irretrievable, failure. The court correctly found that even though the defendant may not have received any direct consideration for his endorsement, which was, in effect, a gesture of assistance to Fairport, he is nevertheless liable to the plaintiff as an accommodation endorser.

General Statutes § 42a-3-415 (1) defines an accommodation party as "one who signs the instrument in any capacity for the purpose of lending his name to another party to it." There was credible evidence that the plaintiff would not make the loan to Fairport or Bean unless the defendant endorsed the note. In *Knapp* v. *Tidewater Coal Co.,* 85 Conn. 147, 151, the court defined an accommodation endorser as one who endorses without receiving value therefor, and for the purpose of lending his name to some other person. His liability to parties other than the one accommodated is the same as though he were an endorser for value. See *New Haven Bank* v. *Jordan Co.,* 92 Conn. 705, 708. "The want of consideration is the peculiar characteristic of accommodation paper." *Ropkins* v. *Frascatore,* 97 Conn. 708, 711; *First National Bank* v. *Vanderveer,* 9 Conn. Sup. 322, 324. The foregoing cases were decided under the earlier Negotiable Instruments Act. The present code has not altered the law in that respect. *Shakro* v. *Haddad,* 149 Conn. 160, 164; see *Seaboard Finance Co.* v. *Dorman,* 4 Conn. Cir. Ct. 154, 156. "Under the Commercial Code absence of consideration is not a requisite of status as an accommodation party. The essential characteristic is that the accommodation party is a surety, and not that he has signed gratuitously." 11 Am. Jur. 2d 163, Bills and Notes, § 121; Uniform Commercial Code § 3-415, comment 2. "The burden of proving an absence or failure of

consideration rested on the . . . [defendant]. . . . [He] had to prove it by a fair preponderance of the evidence." *Fisher* v. *Lehrer,* 149 Conn. 106, 110. The assignment of error concerning absence of consideration is without merit.

There is no error.

In this opinion JACOBS and WISE, Js., concurred.