982 P.2d 833

**CITIBANK (ARIZONA), an Arizona corporation, Plaintiff/Appellant,**

v.

**Virginia VAN VELZER, a single woman, Defendant/Appellee.**

No. 2 CA–CV 98–0007.

Court of Appeals of Arizona, Division 2, Department B.

July 14, 1998.

DeConcini, McDonald, Yetwin & Lacy, P.C., by Gary F. Urman, Tucson, for Plaintiff/Appellant.

Slutes, Sakrison, Grant, Hill & Rubin, P.C., by Mark Rubin, Tucson, for Defendant/Appellee.

*OPINION*

HOWARD, Judge.

¶ 1 Appellant Citibank appeals from the trial court's granting of summary judgment dismissing its promissory note deficiency action against appellee Virginia Van Velzer. We affirm.

## BACKGROUND

¶ 2 In July 1988, Oracle/Roger Limited Partnership (the Partnership) borrowed $2,250,000 from Citibank to acquire real property and build a shopping center. It signed a promissory note and deed of trust documenting the transaction. John Van Velzer, Virginia's husband at the time, also signed the promissory note "individually." In consideration for his execution of the loan documents, John acquired a limited partnership interest in the Partnership. The Van Velzers did not acquire any interest in the real property, which was purchased solely in the name of the Partnership.

¶ 3 Subsequently, the Partnership signed documents modifying the terms of the transaction. John also signed these documents, executing the Promissory Note Modification Agreement "individually" and the Change in Terms Agreement as a "co-borrower." Virginia did not sign any of the documents and claims she would not have signed them if she had been asked.

¶ 4 The Partnership defaulted on the note, and Citibank sold the real property at a trustee's sale, recovering less than the amount owed. Citibank then sued the Partnership, the Van Velzers, and others to recover the deficiency. Virginia moved for summary judgment claiming, pursuant to A.R.S. § 25–214(C), that she could not be held liable for any portion of the deficiency because she had not signed the loan documents. The trial court agreed and entered judgment in her favor.

## DISCUSSION

¶ 5 The parties do not dispute the relevant facts. We review issues of statutory interpretation and application de novo, *Schwarz v. City of Glendale*, 190 Ariz. 508, 950 P.2d 167 (App.1997), and we will uphold the trial court's decision if it is correct for any reason. *Logerquist v. Danforth*, 188 Ariz. 16, 932 P.2d 281 (App.1996).

¶ 6 Section 25–214(C) sets out two exceptions to the general rule stated in § 25–214(B) that each spouse has equal management, control, and disposition rights over a couple's community property and equal power to bind the community:

> Either spouse separately may acquire, manage, control or dispose of community property, or bind the community, except that joinder of both spouses is required in any of the following cases:
>
> 1. Any transaction for the acquisition, disposition or encumbrance of an interest in real property . . . .
>
> 2. Any transaction of guaranty, indemnity or suretyship.

The trial court found that both subsection (C)(1), the real estate exception, and subsection (C)(2), the surety exception, protected Virginia from liability. Because we conclude that John signed as an accommodation party and that the surety exception applies, we need not discuss the real property exception.

¶ 7   Citibank first claims that John signed the documents as a "principal," arguing that he could not therefore be an accommodation party. However, former A.R.S. § 47–3415,[1] which was in effect at the time the documents were signed, provided that "[a]n accommodation party is one who signs the instrument *in any capacity* for the purpose of lending his name to another party to it." (Emphasis added.) The fact that John signed as a "principal" or maker, therefore, does not preclude him from being an accommodation party.

¶ 8   Citibank next claims John was not an accommodation party because he received a benefit from the transaction, arguing that the enactment of former § 47–3415 was insufficient to overrule prior Arizona case law, which held that a person who receives sufficient consideration for signing a document cannot be an accommodation maker, citing *McQueen v. First National Bank*, 36 Ariz. 74, 283 P. 273 (1929). Former § 47–3415 mirrored former Uniform Commercial Code § 3–415, 2A U.L.A. 257 (1991). The official comment to that U.C.C. provision states that § 3–415 eliminated the requirement, present in both A.R.S. § 4174 (1913) and Uniform Negotiable Instruments Law § 29 (1896), that an accommodation maker must sign the instrument " 'without receiving value therefor.' " 2A U.L.A. at 258. Consequently, former § 47–3415 removed the distinction between a compensated and a gratuitous accommodation party. We agree with jurisdictions that have adopted former U.C.C. § 3–415 and have held that an indirect benefit does not change a party's status as an accommodation maker. *See Fairfield County Trust Co. v. Steinbrecher*, 5 Conn. Cir.Ct. 405, 255 A.2d 144 (1968); *see also*

*Dalton v. George B. Hatley Co.*, 634 S.W.2d 374 (Tex.App.1982).

¶ 9   Rather than focusing on whether the accommodation maker received a benefit from the transaction, former § 47–3415 focused on whether the party signed "for the purpose of lending his name to another party." The Partnership purchased and took title to the real property and planned to construct a shopping center on it. To accomplish this, the Partnership, not the Van Velzers, needed the loan from Citibank. This indicates that John was "lending his name" to another party, the Partnership. Another factor in determining accommodation status is whether the lender required the accommodation party to agree to liability before it would fund the loan. *Mooney v. GR & Assoc.*, 746 P.2d 1174 (Utah App. 1987). The record indicates, and Citibank did not dispute, that John's credit was necessary for it to fund the loan. The Partnership was not credit worthy; it had no substantial assets other than the real property being purchased and had arranged a line of credit "as additional collateral." Thus, under former § 47–3415, John clearly signed as an accommodation party. *See, e.g., Godfrey State Bank v. Mundy*, 90 Ill.App.3d 142, 45 Ill.Dec. 549, 412 N.E.2d 1131 (1980); *Philadelphia Bond & Mortgage Co. v. Highland Crest Homes*, 235 Pa.Super. 252, 340 A.2d 476 (1975).

¶ 10   Furthermore, although current A.R.S. § 47–3419 became effective after the documents were signed, it is relevant because some courts have determined there is no substantive difference between U.C.C. § 3–419, upon which § 47–3419 is based, and former U.C.C. § 3–415, upon which former § 47–3415 is based. *See In re Robinson Bros. Drilling*, 9 F.3d 871 (10th Cir.1993). Section 47–3419 provides:

A.   If an instrument is issued for value given for the benefit of a party to the instrument ("accommodated party") and another party to the instrument ("accommodation party") signs the instrument for the purpose of incurring liability on the instrument without being a direct benefi-

---

**1.**   In 1993, our legislature repealed the prior uniform commercial code statutes and adopted the version of the Uniform Commercial Code now found in title 47, chapter 3, of our statutes. 1993 Ariz. Sess. Laws, ch. 108, §§ 5 and 6.

ciary of the value given for the instrument, the instrument is signed by the accommodation party "for accommodation."

Although John received his interest in the Partnership for executing the documents, he was not "a direct beneficiary of the value given for the instrument," as Citibank conceded at oral argument. The value given for the instrument was a loan of $2,250,000 from Citibank to the Partnership not a limited partnership interest. John received no direct benefit from Citibank; his limited partnership interest was only an indirect benefit of the value given. Further, assuming as true Citibank's argument that he also received the proceeds of the loan because his separate corporation built the shopping center on the real property, the benefit he received from Citibank's loan to the Partnership was still indirect.

¶ 11 Although determining accommodation status is usually a question of fact, *see* § 47–3419 cmt. 3; *First Dakota National Bank v. Maxon*, 534 N.W.2d 37 (S.D.1995), Citibank has produced no evidence that would give rise to a factual issue concerning John's status as an accommodation maker.[2] *See Orme School v. Reeves*, 166 Ariz. 301, 166 Ariz. 301, 802 P.2d 1000 (1990). We conclude, therefore, that he was an accommodation party to the instrument.

¶ 12 As an accommodation party, John was a surety. A.R.S. § 47–3419 U.C.C. cmt. 3 ("An accommodation party is always a surety."); *see also* former U.C.C. § 3–415 cmt. 1. "Under the Code[,] the word 'surety' includes all 'guarantors' and all 'accommodation parties.'" 2 James J. White & Robert S. Summers, *Uniform Commercial Code* § 16–10 at 107 (4th ed.1995). "It is common practice for a surety to appear on a note either as a co-maker or as an indorser.... [I]n either case, the Code calls him an 'accommodation party.'" *Id.* at 105–106 (footnotes omitted).

¶ 13 Citibank argues however, that an accommodation party is not necessarily a surety, citing *Cowan v. Ramsey*, 15 Ariz. 533, 15 Ariz. 533, 140 P. 501 (1914), and *Young v. Carr*, 44 Ariz. 223, 44 Ariz. 223, 36 P.2d 555 (1934), in which the supreme court ruled that an accommodation party was not entitled to raise suretyship defenses against the holder of the instrument. Assuming those cases remain the law after the adoption of the U.C.C., they do not mandate that we adopt Citibank's position. Citibank concedes that, under *Young*, an accommodation party is a surety as to the other makers of the instrument,[3] a distinction with which courts in other states have agreed.[4] Further, *Cowan* and *Young* focused on the relationship between the accommodation party and the holder, and did not involve any issue regarding § 25–214, which focuses on the relationship between the spouses. Under subsection (C)(2), in any transaction of suretyship, the community is not bound by one spouse's signature. John presumably remains personally liable to Citibank as a maker, absent any surety or contract defenses under *Cowan*, *Young*, or the U.C.C. The transaction, however, was one of suretyship, requiring Virginia's joinder under § 25–214(C)(2) in order to bind the community.

¶ 14 Citibank also argues that John cannot be considered a surety because he agreed to be primarily liable. A surety is, however, primarily liable. *See Sec. Ins. Co. of New Haven v. Johns–Manville Sales Corp.*, 8 Ariz.App. 18, 442 P.2d 555 (1968) (surety is primarily liable; guarantor is secondarily liable); Restatement (Third) of Suretyship & Guaranty § 15(c) (1996) (A surety "is jointly and severally liable with the principal obligor to perform the obligation set forth in [the] contract."); 38A C.J.S. *Guaranty* § 7(b) at 536 (1996) ("[A]s to the creditor or obligee the surety is primarily and directly liable on his contract...."). To hold that § 25–214(C)(2) does not apply to transactions where the spouse is primarily

---

**2.** Tellingly, Citibank's internal documents show that it considered John a guarantor.

**3.** That distinction is important because an accommodation maker has certain procedural and subrogation rights under A.R.S. §§ 12–1641

through 12–1646, which an ordinary comaker would not have.

**4.** *See Home Center Supply of Maryland v. Certainteed Corp.*, 59 Md.App. 495, 476 A.2d 724 (1984); *Philadelphia Bond & Mortgage.*

liable would eviscerate the protection that the statute affords in suretyship transactions. John's agreement to be primarily liable is consistent with a surety agreement, and Virginia's joinder was required under § 25–214(C).

¶ 15 Citibank argues further that John expressed his intent to bind the community by signing the note which provided for recourse against community property and that the law·presumes any debt a spouse incurs is a community debt. Acceding to his intent to bind the community in this instance, however, would, in effect, eliminate the requirement that both spouses execute the documents in order for the marital community to become liable for the debt of another. *See Consolidated Roofing & Supply Co. v. Grimm*, 140 Ariz. 452, 682 P.2d 457 (App. 1984). The Partnership purchased the property and incurred the debt, and John is in substance, a surety for that debt. Section 25–214(C)(2) therefore precludes him, absent Virginia's joinder, from obligating the marital community for the Partnership debt, regardless of his intentions. As to debts to which § 25–214(C) applies, it rebuts the presumption that the debt is a community debt.

¶ 16 Finally, Citibank's argument that this decision will impose a hardship on the lending community should be addressed to the legislature, which enacted § 25–214(C)(2). We note, however, that Citibank and other lenders intending to rely on community assets in other situations require the joinder of both spouses before funding such loans.

¶ 17 We conclude that § 25–214(C)(2) applied to John as an accommodation maker of the note, and thus a surety, and required the joinder of his spouse to bind the marital community. The trial court, therefore, correctly granted summary judgment to Virginia Van Velzer.

¶ 18 Affirmed.

CONCURRING: WILLIAM E. DRUKE, Chief Judge, and PHILIP G. ESPINOSA, Judge, concur.