263 P.3d 664

**CLIFF FINDLAY AUTOMOTIVE, LLC,**
**an Arizona limited liability company,**
**Plaintiff/Counterdefendant/Appellee,**

v.

**Susan OLSON,**
**Defendant/Counterclaimant/Appellant.**

**No. 1 CA–CV 10–0399.**

Court of Appeals of Arizona,
Division 1, Department A.

Sept. 27, 2011.

116

Wachtel, Biehn & Malm By Kenneth E. Moyer, Lake Havasu City, Attorneys for Defendant/Counterclaimant/Appellant.

J. Jeffrey Coughlin PLLC By J. Jeffrey Coughlin, Prescott, Attorneys for Plaintiff/Counterdefendant/Appellee.

## OPINION

THOMPSON, Judge.

¶1 Susan Olson (Olson) appeals the trial court's summary judgment in favor of Cliff Findlay Automotive (seller) and the denial of summary judgment in her favor. Finding unresolved questions of fact and law, we reverse and remand to the trial court for further proceedings.

## BACKGROUND

¶2 On or about August 2004, Olson's adult daughter Lisa (daughter) attempted to purchase a new vehicle from seller. Daughter

apparently told the salesperson that she was exploring bankruptcy. Seller advised daughter that she would need a cosigner. Olson agreed to act as her daughter's co-signer. Evidence in the record indicates that seller was aware that daughter was expecting to lose her then-current 2001 vehicle in bankruptcy. A 2003 Honda Accord was purchased for $25,863.68 and both daughter and Olson signed on the lines indicated for "buyers" or "owners" or "purchasers" on the forms provided by seller and on the title. Although Olson had no intention of using the vehicle or having an ownership interest in it, no special endorsements were included by Olson.

¶ 3 Shortly thereafter, daughter filed for bankruptcy. It was discovered that seller filed its lien twenty-eight days after purchase, rather than within the twenty-days as required by law. By stipulation in the bankruptcy court with the trustee, seller agreed that it had not timely perfected its lien on the Accord and therefore did not have a security interest in the vehicle. The 2004 stipulation concluded, therefore, that the lien was set aside as preferential under 11 U.S.C. § 547. The stipulation was approved by the bankruptcy court. The car devolved to the estate and was sold for the benefit of the creditors. Seller became an unsecured non-priority creditor for the amount of $24,624.28. The trustee sold the Accord for $18,000.[1] Daughter had other unsecured creditors and seller received $5,357.92. Daughter's debt was discharged. In September 2005, Olson released her ownership interest in the vehicle.

¶ 4 In 2006, seller brought the instant suit against Olson as a "co-signer" for the Accord in the amount of the full purchase price of $24,662.68 plus interest, late fees, attorneys' fees and costs and pre- and post-judgment interest. Seller filed for summary judgment on the sales contract on the basis that Olson was a co-owner. Olson filed a cross-motion for summary judgment arguing she was an accommodation party under the Uniform Commercial Code (U.C.C.) and, as such, is entitled to certain defenses set out in Arizona Revised Statutes (A.R.S.) § 47–3605 (2005), including that seller impaired the value of the collateral by failing to perfect the lien on the vehicle.

¶ 5 The trial court issued a minute entry finding:

1.  Olson came into the dealership to be an accommodating party in order to assist daughter who could not qualify alone;

2.  Olson never intended to be an owner of the Accord, although she was listed in the "owner" line of the contract;

3.  Seller failed to timely perfect the lien; and

4.  Daughter filed bankruptcy prior to the lien being perfected.

The trial court concluded that Olson was an accommodation party and that seller failed in its duty to timely file the lien on the Accord. The trial court went on to conclude that there was "no showing of consequential damages" to Olson and therefore, despite being an accommodation party, Olson was liable for the contract damages. The trial court granted seller summary judgment and denied Olson's cross-motion. The judgment ordered that Olson pay seller the full contract damages minus the $5,357.92 paid in the bankruptcy court plus interest, late fees, and attorneys' fees of $13,859 and litigation costs of $303. Olson timely appealed.

**DISCUSSION**

¶ 6 Olson asserts that the trial court erred in granting summary judgment to seller and denying it to her. She argues that as an accommodation party she is entitled to, and showed sufficient facts proving, an impairment of collateral defense pursuant to A.R.S. § 47–3605. She argues that, given the facts in the record regarding the Kelly Blue Book values and that seller received $5,357.92 in the bankruptcy, it is she who is owed money from seller. She argues that seller owes her either $1,245.24 (if the wholesale value of the

---

1.  The Kelley Blue Book, July–August 2004, showed a wholesale value of $20,550 and a retail value of $24,245 for a 2003 Accord.

Accord is used) or $4,940.24 (if the retail value is used).

¶ 7 Seller asks us to affirm but argues, in the alternative, that Olson is not an accommodation party because she failed to include an "anomalous endorsement" pursuant to A.R.S. § 47–3419(C) and argues she received a direct benefit from the car pursuant to A.R.S. § 47–3419(A); seller further argues that the trial court correctly determined that Olson showed no "consequential damages" from the failure to perfect the lien.

¶ 8 On appeal from summary judgment, we must determine whether any material factual disputes exist and, if not, whether the trial court correctly applied the law. *In re Estate of Johnson*, 168 Ariz. 108, 109, 811 P.2d 360, 361 (App.1991) (citation omitted). We view the evidence in the light most favorable to the party against whom summary judgment is sought. *Estate of Hernandez v. Flavio*, 187 Ariz. 506, 509, 930 P.2d 1309, 1312 (1997). We agree that if Olson is an accommodation party, then she is entitled to offsets in the amount that seller impaired the collateral in the vehicle.

## A.   Accommodation Party

¶ 9 Seller argues because there is no anomalous endorsement on the purchase contract or title, Olson should be deemed a buyer, not a guarantor/accommodation party. Section 47–3419 (2005) states, in pertinent part:

A.   If an instrument is issued for value given for the benefit of a party to the instrument ("accommodated party") and another party to the instrument ("accommodation party") signs the instrument for the purpose of incurring liability on the instrument without being a direct beneficiary of the value given for the instrument, the instrument is signed by the accommodation party "for accommodation".

B.   An accommodation party may sign the instrument as maker, drawer, acceptor or indorser and, subject to subsection D of this section, is obliged to pay the instrument in the capacity in which the accommodation party signs. The

obligation of an accommodation party may be enforced notwithstanding any statute of frauds and whether or not the accommodation party receives consideration for the accommodation.

C.   **A person signing an instrument is presumed to be an accommodation party and there is notice that the instrument is signed for accommodation if the signature is an anomalous indorsement or is accompanied by words indicating that the signer is acting as surety or guarantor with respect to the obligation of another party to the instrument.**  Except as provided in § 47–3605, the obligation of an accommodation party to pay the instrument is not affected by the fact that the person enforcing the obligation had notice when the instrument was taken by that person that the accommodation party signed the instrument for accommodation.

D.   If the signature of a party to an instrument is accompanied by words indicating unambiguously that the party is guaranteeing collection rather than payment of the obligation of another party to the instrument, the signer is obliged to pay the amount due on the instrument to a person entitled to enforce the instrument only if:

1.   Execution of judgment against the other party has been returned unsatisfied;

2.   The other party is insolvent or in an insolvency proceeding;

3.   The other party cannot be served with process; or

4.   It is otherwise apparent that payment cannot be obtained from the other party.   (Emphasis added).

¶ 10   Under A.R.S. § 47–3419(C), where there is an anomalous endorsement there is a rebuttable presumption that she is an accommodating party; failure to have an anomalous endorsement does not create a presumption that she is not an accommodation party. That is a question of fact. *See Citibank (Ariz.) v. Van Velzer*, 194 Ariz. 358, 361, ¶ 11, 982 P.2d 833, 836 (App.1998). That Olson signed as a "buyer" does not preclude

her from being an accommodation party. *Id.* at 360, 982 P.2d at 835. We will review all the pertinent evidence in seeking to determine the parties' intent as to Olson's status. *See Taylor v. State Farm Mut. Auto. Ins. Co.*, 175 Ariz. 148, 154, 854 P.2d 1134, 1146 (1993).

█ ¶ 11 Evidence in the record on appeal supports Olson's claim that she was there to "cosign" or "lend her name" to her daughter due to daughter's inferior credit. As noted in *Van Velzer*, the status accorded Olson as "co-signer" in seller's documents may be "telling[ ]." 194 Ariz. at 361, n. 2, 982 P.2d at 836, n. 2. On the other hand, as noted above, Olson signed as a purchaser of the car and no language in the note itself indicates she is an accommodation party, evidence tending to favor seller. *See First Dakota Nat'l Bank v. Maxon*, 534 N.W.2d 37, 42 (S.D.1995). Olson was on the title, although this is also not legally dispositive. *See In re One 1983 Toyota Silver Four–Door Sedan*, 168 Ariz. 399, 402, 814 P.2d 356, 359 (App.1991) (title shows presumptive ownership only, which may be rebutted).[2] By reason of the foregoing considerations, we remand for a factual determination of Olson's claim that she is an accommodation party.

**B. Availability of Accommodation Defenses**

█ ¶ 12 If Olson is an accommodation party, then she may be entitled to full or partial discharge of her debt due to seller's failure to timely perfect the lien. The seller's failure to timely perfect the lien is undisputed. Section 47–3605 (2005) provides, in pertinent part:

E. If the obligation of a party to pay an instrument is secured by an interest in collateral and a person entitled to enforce the instrument impairs the value of the interest in collateral, the obligation of an indorser or accommodation party having a right of recourse against the obligor is discharged to the extent of the impairment. The value of an interest in collateral is impaired to the extent the value of the interest is reduced to an amount less than the amount of the right of recourse of the party asserting discharge or the reduction in value of the interest causes an increase in the amount by which the amount of the right of recourse exceeds the value of the interest. The burden of proving impairment is on the party asserting discharge.

F. If the obligation of a party is secured by an interest in collateral not provided by an accommodation party and a person entitled to enforce the instrument impairs the value of the interest in collateral, the obligation of any party who is jointly and severally liable with respect to the secured obligation is discharged to the extent the impairment causes the party asserting discharge to pay more than that party would have been obliged to pay, taking into account rights of contribution, if impairment had not occurred. If the party asserting discharge is an accommodation party not entitled to discharge under subsection E of this section, the party is deemed to have a right to contribution based on joint and several liability rather than a right to reimbursement. The burden of proving impairment is on the party asserting discharge.

G. Under subsection E or F of this section, impairing value of an interest in collateral includes:

1. Failure to obtain or maintain perfection or recordation of the interest in collateral;

2. Release of collateral without substitution of collateral of equal value;

3. Failure to perform a duty to preserve the value of collateral owed, under chapter 9 of this title or other law, to a

---

**2.** That Olson was on the title also does not alone establish that she received a benefit such that accommodation party status is precluded. "An accommodation party simply cannot receive the *primary* benefit from the instrument." *Branch Banking and Trust Co. v. Thompson*, 107 N.C.App. 53, 418 S.E.2d 694, 699 (1992) (citation omitted).

debtor or surety or other person secondarily liable; or

4. Failure to comply with applicable law in disposing of collateral.

The failure by seller to perfect the lien impaired the collateral in the vehicle. The failure to timely perfect the lien caused the seller to be treated as an unsecured nonpriority creditor in bankruptcy, and likely substantially altered seller's recovery in bankruptcy. This reduction in the proceeds realized by the vehicle cannot work to Olson's disadvantage.

¶ 13 The trial court determined that Olson did not prove "consequential damages," by which it presumably meant damages to her as a result of seller's failure to perfect the lien. We disagree. The record on appeal shows generalized evidence as to the value of the Accord. The trustee sold the vehicle for $18,000. That amount would be the lowest possible value assignable for the Accord. Olson submitted a source indicating value between $20,550 and $24,245. Once the value of the Accord is determined, the trial court must consider the undisputed evidence that seller has already received $5,357.92 as an unsecured creditor from daughter's bankruptcy estate. For these reasons, we reverse the trial court's damages determination and remand for further proceedings consistent with these guidelines.

## C. Abandonment by Olson

¶ 14 Seller claims that Olson abandoned her right to any offset or defenses as an accommodation party because she released her interest in the vehicle during the bankruptcy proceedings. In Olson's reply brief, she indicates abandonment is being raised for the first time on appeal. We note that the abandonment argument was raised, although perfunctorily, in seller's motion for summary judgment. Seller claimed it did not breach any duty to Olson for failing to timely perfect the lien, because Olson could have "kept the Vehicle and made payments on the debt or she could have sold the vehicle to pay the debt." Olson asserts in her reply that, given seller's failure to timely perfect the lien, any attempt to protest the bank-

ruptcy trustee's actions would have been futile and/or financially impossible to the extent that it required her to purchase the Accord from the estate.

¶ 15 Olson's abandonment came well after both the filing of the bankruptcy and seller's failure to timely perfect the lien, and it may have been futile or unreasonably onerous for her to attempt to preserve her interest in the vehicle in bankruptcy proceedings. Summary judgment is not appropriate as a matter of law on the issue of abandonment.[3]

### ATTORNEYS' FEES

¶ 16 Both Olson and seller request contract and A.R.S. § 12–341.01 attorneys' fees on appeal. As there is not at this time a prevailing party, we decline to award fees to either party at this point in the case.

### CONCLUSION

¶ 17 For the foregoing reasons, the trial court is reversed. The attorneys' fees determination is reversed. The matter is remanded to the trial court for further proceedings consistent with this decision.

CONCURRING: PHILIP HALL, Presiding Judge and LAWRENCE F. WINTHROP, Judge.

---

**3.** Because of our determination of the other issues in this appeal, we do not specifically address Olson's waiver argument.