476 A.2d 724

**HOME CENTER SUPPLY OF MARYLAND, INC., et al.**

v.

**CERTAINTEED CORPORATION.**

**No. 1463, Sept. Term, 1983.**

Court of Special Appeals of Maryland.

June 12, 1984.

**498**

Hal I. Lackey, Silver Spring, for appellants.

Nathan H. Wasser, McLean, Va., for appellee.

Argued before LOWE, ADKINS and BELL, JJ.

BELL, Judge.

In this case, Appellant indorsed a promissory note representing an antecedent obligation owed by the maker of the

note to the payee. During the discussions about the note, the payee promised to extend a line of credit to the maker of the note. The maker defaulted on the note. The question now before us is whether the alleged failure of the payee to fulfill its promise to extend credit excused liability on the part of the indorser of the note. We hold that it did not.

Before we address the merits of this issue, a brief factual background is in order.

CertainTeed Corporation, a manufacturer of roofing materials and other building products, entertained a compatible business relationship with Home Center Supply of Maryland, Inc., for approximately ten years prior to March 1982. Joseph DelPo, as president of Home Center, personally supervised its business with CertainTeed.

As of March 1982, Home Center owed CertainTeed over $170,000, of which about $100,000 was delinquent. In order to reduce the amount in arrears and to formulate a basis upon which the two companies could continue their business relationship, a meeting was held on March 31, 1982 among DelPo, F. Lee Seery, regional credit manager of Certain-Teed, and his immediate supervisor, Bing Miller. At the meeting, CertainTeed agreed to reduce the indebtedness owing from Home Center to CertainTeed through October 1981 to a debt evidenced by a promissory note so that it could be removed from CertainTeed's books as a past due debt on an open account. The principal amount of the note was $41,968.47 with no interest and was to be paid in monthly installments of $3,497.37. DelPo personally indorsed the note. To help reduce the remaining indebtedness, it was further agreed that with each new order from CertainTeed, Home Center would pay $500.00 in addition to the purchase price of the materials and that CertainTeed would continue to sell to Home Center on an open account up to $150,000.00. The note did not contain any reference to these further agreements.

Home Center made five payments on the note none of which, CertainTeed alleges, was timely made. Beginning in October of 1982, no further payments were forthcoming. Several prior checks had been dishonored for lack of sufficient funds or were subject to stop payment orders. DelPo claims that he stopped payment on the checks because he was confident the amount owed to CertainTeed was below $150,000.00.

As a result of the defaults by Home Center, CertainTeed accelerated the balance due on the note, $24,481.62, and called for immediate payment in full. When no payment was forthcoming, CertainTeed initiated the present action to collect the entire balance due of $121,284.40 on the open account. As to that summary judgment was entered against Home Center and DelPo.

At trial, the only issue contested was the liability of DelPo as an indorser on the promissory note made by Home Center in the original amount of $41,968.47. DelPo defended against his liability as an indorser on the ground that CertainTeed did not fulfill its obligation to extend Home Center a $150,000.00 line of credit, which he alleged it had promised to do as consideration for his indorsement. Home Center had paid the note down to $24,481.62. After taking evidence, the court found in favor of CertainTeed. DelPo appeals from the decision of the Circuit Court for Montgomery County, Maryland, entering judgment against him for $24,481.62.

Although DelPo raises three specific allegations in his brief, the thrust of his argument is that he should be relieved of his obligation as an indorser on the promissory note because the consideration for which he allegedly bargained, the $150,000.00 line of credit, never materialized.

To address DelPo's contention, we must first determine if the promissory note represents a negotiable instrument. If the note qualifies as a negotiable instrument, we then ask whether CertainTeed has the status of a holder in due course. If CertainTeed is a holder in due course, we then

must consider whether DelPo can raise the defense of failure of consideration on the part of CertainTeed. And finally, if the defense can in fact be raised against Certain-Teed, we will proceed to analyze whether CertainTeed's alleged failure of consideration relieved DelPo from liability.

At the outset, however, we note the status of DelPo as an indorser and his obligations resulting therefrom. In this case, DelPo, by his personal indorsement, undertook to "back up" the performance of Home Center and thereby give CertainTeed the added assurance of having another party to the obligation. It is a common practice for a surety such as DelPo to appear on a note as either a co-maker or as an indorser. In either case, he becomes an accommodation party and owes the holder of the note the obligation of either the maker or the indorser. It makes little difference in this case whether appellant is a maker or an indorser, though, since the contract and warranty liabilities of each class of signatories to a note are not so dissimilar as to predicate liability upon the distinction between a maker and an indorser. *Schaeffer v. United Bank & Trust Co.*, 32 Md.App. 339, 360 A.2d 461 (1976), *aff'd*, 280 Md. 10, 370 A.2d 1138 (1977).

As between the surety, DelPo, and the debtor, Home Center, Home Center has the primary obligation to pay the debt. Since the creditor, CertainTeed, is entitled to only one performance and the debtor receives the benefit of the transaction, the surety's obligation is undertaken with the expectation that the debtor will meet his commitment to the creditors; thus, if the surety is made to pay the principal's debt, he has the right to recover from the principal. White and Summers, Uniform Commercial Code, § 13–12 (1980).

Section 3–415 of the Commercial Code defines accomodation party as "one who signs the instrument in any capacity for the purpose of lending his name to another party to it." Md.Code (1974, Repl.Vol.1975) *Commercial Law Article*, § 3–415(1). It is readily apparent that DelPo

lent his name to Home Center to facilitate the continuation of the business relationship with CertainTeed. The actual language of § 3–415(1) indicates that an accommodation party also signs in a particular capacity, as a maker, acceptor or indorser of an instrument. The Official Comment 1 to § 3–415 explains that:

> Subsection (1) recognizes that an accommodation party is always a surety (which includes a guarantor), and it is his only distinguishing feature. He differs from other sureties only in that his liability is on the instrument and he is a surety for another party to it. His obligation is therefore determined by the capacity in which he signs. An accommodation maker or acceptor is bound on the instrument without any resort to his principal, while an accommodation indorser may be liable only after presentment, notice of dishonor and protest.

Moreover § 3–415(2) refers specifically to liability of an accommodation party "in the capacity in which he has signed." It follows therefore that DelPo is an accommodation party with liability as an indorser of the note. As an indorser, DelPo promised that "upon dishonor and any necessary notice of dishonor and protest he will pay the instrument according to its tenor at the time of his indorsement to the holder ...." Md.Code (1974, Repl.Vol.1975) Commercial Law Article § 3–414(1).[1]

A. Is the promissory note a negotiable instrument?

Any writing to be a negotiable instrument within the Commercial Code must

(a) Be signed by the maker or drawer; and

---

1. Subtitle 5 of the Commercial Law Article governs the requirements of presentment, notice of dishonor and protest. In this case, Certain-Teed presented the note and gave notice of dishonor to DelPo by demanding payment of the note in a certified letter dated November 1, 1982. (§ 3–504; § 3–508). "Protest" is not necessary in this case because the note does not represent an "international" instrument. (§ 3–501).

(b) Contain an unconditional promise or order to pay a sum certain in money and no other promise, order, obligation or power given by the maker or drawer except as authorized by this title; and

(c) Be payable on demand or at a definite time; and

(d) Be payable to order or to bearer.

Md.Code (1974, Repl.Vol.1975) *Commercial Law Article* § 3–104.

Home Center and DelPo, individually, signed a promissory note to CertainTeed which provided as follows:

May 3, 1982

$41,968.47

For value received I promise to pay CertainTeed Corporation or order, the sum of Forty-One Thousand Nine Hundred Sixty-Eight and $^{47}/_{100}$ Dollars, at the office of Certain-Teed .... in monthly installments, payable as follows, to wit: $3,497.37 dollars on the 10th day of May 1982, and 3,497.37 dollars on the 10th day of each succeeding month thereafter, except final installment of 3,497.40 until the whole sum named is finally paid .... If default is made in the payment of any installment when due, then all the remaining installments shall become due and payable at once ....

/S/ Home Center Supply of
Md., Inc.
/S/ Joseph M. DelPo (President)
/Endorsed/ Joseph M. DelPo—
Individual

Applying § 3–104 to this note, we find that it is signed by the maker, Home Center; it is payable at a definite time; and it is payable to order. We also find that subpart (1)(b) of § 3–104 is satisfied. That section is intended to make clear that, so far as negotiability is affected, the conditional or unconditional character of the promise or order is to be determined by what is expressed in the instrument itself. This note on its face contains an "unconditional" promise to pay $41,968.47. The agreement by

CertainTeed to extend Home Center a $150,000.00 line of credit does not render the note conditional. Section 3–105(1)(a) provides that an instrument is not rendered non-negotiable by the fact that it is subject to implied or constructive conditions. The purpose of this section was to remove any doubt about whether constructive conditions normally associated with contract law destroy negotiability. *See* [Commercial Paper] 2 Uniform Commercial Code Service (MB) § 2.09(2) (1983). For example a buyer of goods does not come under any duty to pay for the goods until he receives them. His obligation to pay is conditional upon the seller's performance, but this constructive condition does not destroy negotiability. By the same token, CertainTeed's promise to extend a line of credit would be characterized as a constructive condition. Therefore, all the requirements for negotiability under § 3–104 have been met. We note, however, that although a constructive condition on a note does not destroy negotiability, failure to fulfill that constructive condition may be raised as a defense against a holder of the note.

### B. Is CertainTeed a Holder in Due Course?

Before we can consider whether there was a failure of consideration on the part of CertainTeed, we must determine if CertainTeed is a holder in due course. A holder in due course is a holder who takes the instrument for value, in good faith, and without notice that it is overdue or has been dishonored or of any defense against or claim to it on the part of any person. Md.Code (1974, Repl.Vol.1975) *Commercial Law Article,* § 3–302. Section 302(2) provides that a payee may have the status of a holder in due course. A holder takes the instrument for value "[w]hen he takes the instrument in payment of or as security for an antecedent claim against any person whether or not the claim is due." Md.Code (1974, Repl.Vol.1975), *Commercial Law Article* § 3–303(b).

■■■ Therefore, since the note represents an antecedent debt by Home Center, CertainTeed qualifies as a holder who took the note for value. Furthermore, when CertainTeed took the instrument it had no notice that the note was overdue, dishonored or that there was any other defense. Thus CertainTeed is a holder in due course.

■■■■ Ordinarily, pursuant to § 3–306, no personal claims and defenses may be raised against a holder in due course,[2] however, there is an exception to that rule which applies in this instance. That exception is that a holder in due course does not take the instrument free of the defenses of any party to the instrument with whom the holder has dealt. Md.Code (1974, Repl.Vol.1975) *Commercial Law Article*, § 3–305(2). Hence, although CertainTeed is a holder in due course, it is subject to the defense of failure of consideration because it dealt directly with DelPo.

C. Was there a failure of consideration so as to excuse liability of DelPo?

We turn now to the argument raised by DelPo that he should not be bound by his contract of indorsement because there was a failure of consideration by CertainTeed. In essence, DelPo urges us to believe that in exchange for his indorsement, CertainTeed agreed to extend a line of credit to Home Center for $150,000.00. When CertainTeed failed to continue Home Center's credit, regardless of the reason, DelPo asserts that his liability thereby ceased. DelPo's argument is without merit.

■■■■ DelPo opines that since he was already doing business with CertainTeed, and since the note merely re-

---

**2.** Under Section 3–305, all "real defenses" may be raised against a holder regardless of his status as a holder in due course. These defenses include: infancy; incapacity, duress or illegality; fraud in the inducement; discharge in insolvency proceedings; any discharge of which the holder has notice when he takes the instrument Md.Code (1974, Repl.Vol.1975) Commercial Law Article § 3–305(2).

flected an antecedent debt, the only meaningful consideration flowing to the corporation and himself was the credit line. DelPo is correct in his statement that the note reflected an antecedent debt, but he reaches the wrong conclusion. Section 3–408 of the Commercial Law Article provides:

Want or failure of consideration is a defense as against any person not having the rights of a holder in due course (§ 3–305), *except that no consideration is necessary for an instrument or obligation thereon given in payment of or as security for an antecedent obligation of any kind.* (emphasis added).

The antecedent obligation alone may be valid consideration for a promissory note. *Hardy v. Brookhart,* 259 Md. 317, 270 A.2d 119 (1970). Since this note reflected an antecedent debt owed by Home Center to CertainTeed, and the surety's (DelPo's) obligation is supported by consideration flowing to its principal, (Home Center) *Schaeffer v. United Bank & Trust of Maryland, supra,* DelPo would be bound on the note whether or not there was any additional consideration.

▇▇▇▇▇ Moreover, in further examining the facts and circumstances surrounding the negotiation of the note, it appears that DelPo agreed to act as a surety in order to forestall legal action on the part of CertainTeed to collect the Home Center debt; and to create a willingness on the part of CertainTeed to continue business with Home Center. When questioned as to what formed the basis for having Mr. DelPo sign the promissory note, Mr. Seery responded:

We were at the point because of the delinquency of the account that we were thinking about turning it over to an attorney or collection agency because of the delinquency of the account. We felt that if Mr. DelPo would meet us halfway, sign the note for the oldest delinquency, which was October of '81, we would sell—up to a dollar amount of $150,000.00 which would include the note and the existent on account balance.

When asked if the payments on the note were made contingent in any way upon CertainTeed performing certain obligations on behalf of Home Center Supply of Maryland, Inc., Mr. Seery replied:

> The note is the instrument that enabled us to negotiate selling Mr. DelPo, his company, Home Supply—Home Center Supply, Inc., on a limited basis, on a cash in advance, with a $500.00 payment with each new order that he placed, up to the $150,000.00, which included payment of the note. That would have to be current and we would not exceed $150,000.00, the open account, plus the note.

And further,

> QUESTION. Mr. Seery, would CertainTeed have continued to do business with Home Center Supply of Maryland, Inc., had the promissory note not been signed?
> ANSWER. No.

The discussion of the $150,000.00 line of credit was of secondary importance. Home Center was in desperate circumstances and needed CertainTeed as a supplier. The forebearance from suit on the part of CertainTeed and the willingness to continue doing business with Home Center, in addition to the recognition of the antecedent obligation, represent sufficient consideration to hold DelPo to his indorsement. As we stated in *Schaeffer v. United Bank & Trust Co., supra,* [32 Md.App.] at p. 348–49, 360 A.2d 461 citing White and Summers, Uniform Commercial Code, § 13–14 (1972):

> At the outset one should understand that an accommodation party's failure to receive dollars in his pocket from the creditor is not a defense. Time and again sureties respond to a holder's suit by arguing, 'I am a surety and I did not receive consideration for my contract.' This is a losing argument.... Regardless of whether the surety signs gratuitously or receives compensation, his obligation is supported by the consideration which moves from the creditor to the principal debtor.

■ Furthermore, the letter of April 1, 1982 from Mr. Seery and Mr. DelPo setting forth the terms of the agreement does not compel us to reach a contrary result. The letter states in pertinent part:

It was agreed to by all parties that your line of credit would be maintained at $150,000.00. As the Note payments are made and applied to your account, obviously this would free your line of credit and we would ship on an open line of credit up to the $150,000.00 level. However once we are at $150,000.00 total outstanding at any one time, including the Note, we would be in need of cash in advance for truckload orders.

While this letter does state that CertainTeed promised to maintain a $150,000.00 line of credit, Mr. DelPo's liability on the note is not excused. CertainTeed accelerated the balance due in accord with the provision in the promissory note, when Home Center defaulted for whatever reason on the payments. There is nothing in the letter which requires a $150,000.00 line of credit to be maintained when the agreed payments are not forthcoming. At trial Mr. Seery testified that the company's willingness to extend credit was predicated on timely payments being made on the note. Several checks sent by Home Center to CertainTeed were either stopped or dishonored for lack of sufficient funds, thereby diminishing Home Center's credit. Based on this evidence, it appears that if anyone breached their promise, it was Home Center. Our holding does not, however, preclude DelPo from seeking reimbursement from Home Center pursuant to Section 3–415(5) of the Commercial Law Article, as Home Center was the party being accommodated.

Based on the evidence before us we hold the court did not err in rendering judgment against DelPo for $24,481.62.

JUDGMENT AFFIRMED.

COSTS TO BE PAID BY APPELLANTS.