NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

GRADY'S QUALITY EXCAVATING INC, an Arizona corporation,
*Plaintiff/Appellant*,

*v.*

ALLIANCE STREETWORKS INC, an Arizona corporation; NORTH
AMERICAN SPECIALTY INSURANCE COMPANY, a foreign
corporation, *Defendants/Appellees*,

ALLIANCE STREET WORKS, INC, an Arizona corporation, *Counter-Claimant*,

*v.*

GRADY'S QUALITY EXCAVATING INC, an Arizona corporation,
*Counter-Defendant*.

No. 1 CA-CV 16-0739
FILED 1-2-2018

Appeal from the Superior Court in Yavapai County
No. V1300CV201480119
The Honorable Jeffrey G. Paupore, Judge *Pro Tempore*

**AFFIRMED**

COUNSEL

Schneider & Onofry P.C., Phoenix
By Jason M. Kelly (argued), Luane Rosen, Maria C. Lomeli
*Counsel for Plaintiff/Counter-Defendant/Appellant*

Sacks Tierney P.A., Scottsdale
By Sharon B. Shively (argued), Gaye L. Gould
*Counsel for Defendants/Counter-Claimants/Appellees*

---

## MEMORANDUM DECISION

Presiding Judge Paul J. McMurdie delivered the decision of the Court, in which Chief Judge Samuel A. Thumma and Judge James B. Morse Jr. joined.

---

**M c M U R D I E**, Judge:

**¶1**        Grady's Quality Excavating, Inc. ("Grady's Excavating") appeals from a superior court judgment entered in favor of Alliance Streetworks, Inc. ("Alliance") and American Specialty Insurance Company on all counts, awarding Alliance attorney's fees and costs, and denying Grady's Excavating's Motion for New Trial and/or *Additur*.[1]

### FACTS AND PROCEDURAL BACKGROUND

**¶2**        Grady's Excavating is an Arizona roadway paving company owned by Grady Hopson and his wife Cheryl Hopson, the company's vice president and chief financial officer. Ron Gardner owns Alliance, a public works road construction company originating in California, which has held an Arizona construction license since it moved to Arizona in 2011. While new to the area, Gardner rented some of his equipment to Hopson and discussed possible cooperation on projects.

---

[1]        The superior court awarded Alliance the sum of $15,000 on its counterclaim for equipment rental charges, and denied Alliance's claim for repair costs on that equipment. Because Alliance did not appeal from these rulings, Alliance's counterclaim is not part of this appeal.

¶3            In August 2012, Yavapai County ("County") opened its "Verde Valley School Road shoulder widening and pavement rehabilitation" project ("Project") for bids from potential general contractors. Because Grady's Excavating did not have the bonding capacity to bid on the Project, and Alliance had bonding capacity but no, or very few, employees, Grady's Excavating approached Alliance with an offer to develop a bid and submit it under Alliance's name.

¶4            After Alliance's bid was the lowest submitted, a pre-award meeting was scheduled, during which the County representatives met with Gardner. The County required that "[a] minimum of 50% of the work must be accomplished directly by the bidding contractor." Gardner explained to Aric Stewart, the County's Project Engineer, Alliance would comply with the 50% requirement by paying for more than 50% of the Project's expenses, and that Grady's Excavating would perform all the labor because Alliance had no employees. At trial, Stewart testified he contacted the County Attorney regarding Alliance's unusual form of fulfilling the County requirement. The County determined that if Alliance would treat the listed Grady's Excavating's employees as its own, the County would not reject Alliance's bid. Stewart was aware Alliance would have no real employees, but Gardner assured the County he would be present on site daily and during weekly meetings with Stewart.

¶5            On October 15, 2012, the County awarded the Project to Alliance, executing a prime contract with Alliance for a total amount of $879,893.69 ("Prime Contract"). On November 16, 2012, Grady's Excavating signed a subcontract with Alliance for $361,354.64, agreeing to "furnish all labor, materials, (EXCLUDING ASPHALT) and equipment necessary and perform supervision and labor required for the completion of the phase of the project identified and itemized on Attached 'Schedule A'" ("Subcontract").[2] Schedule A stated Grady's Excavating was responsible for all "grading/paving/drainage" and "concrete headwalls" and specifically excluded tasks to be performed by other subcontractors. Schedule A also outlined the materials and subcontractors to be paid directly by Alliance. The Subcontract further expressly provided: "Any and All Payrolls and Expenses paid by Alliance Streetworks on behalf of Grady's Excavating Quality Excavating shall be deducted from the total of Grady's Excavating Quality Excavating sub-contract amount." In Section 3, the Subcontract also specified Alliance "may deduct from any amounts due to [Grady's

---

[2]        Schedule A stated Alliance would purchase asphalt for the total amount of $323,000.

Excavating] an amount sufficient to protect itself from loss on account of: . . . (d) [f]ailure of [Grady's Excavating] to make payments properly to its subcontractors, suppliers and manufacturers, or for equipment, material or labor."

¶6        Grady Hopson testified at trial he understood Alliance needed to pay some employees through its payroll to satisfy the County requirement, and that Grady's Excavating would reimburse Alliance for any payments to Grady's Excavating's employees. Gardner testified he understood Alliance would cover certain materials, and Grady's Excavating would perform all labor on its part of the Project, with its employees being paid through Alliance's payroll. Cheryl Hopson, who prepared the Subcontract, testified she understood Gardner to act as a "straw general contractor," or someone who manages or oversees the Project, and that Grady's Excavating would perform most of the Project. She also understood the County required Alliance to "do payroll." Cheryl sent an email to Gardner dated November 14, 2012, which accompanied a draft Subcontract and was sent two days before the Subcontract's execution. The emailed read: "Any payroll that is paid by Alliance will be charged back to Grady's Excavating contract amount also. If you want to set aside $60,000 that is for payroll, we would be fine with that. This would reduce Grady's Excavating contract down to $301,354.64." Cheryl also testified she moved certain materials out of Grady's Excavating scope of work into Alliance's to accommodate the County's requirement for Alliance to perform 50% of the Project. Cheryl also emailed Gardner a wage scale for Grady's Excavating's employees, and repeatedly confirmed or clarified which Grady's Excavating's employees would be added to Alliance's payroll.

¶7        During the Project's performance, Grady's Excavating asked Alliance to pay, on its behalf, its subcontractors, which Alliance did because Gardner did not want to jeopardize Alliance's performance bond. Grady's Excavating was not in a good financial position and paid many vendors in cash.

¶8        For its performance, Grady's Excavating submitted three pay applications to Alliance. Cheryl testified Alliance never objected to any of Grady's Excavating's pay applications, but Gardner testified he disputed some. After the first application, Grady's Excavating directly received $36,370.64 from Alliance. In April 2013, the County lowered its payment to Alliance by $46,091.06 from the original contract amount of $879,893.69, adjusting it per the Prime Contract for actual quantities of work performed, which also decreased Grady's Excavating's Subcontract amount.

4

¶9        After a five-day bench trial, the superior court concluded Alliance had paid Grady's Excavating for all work Grady's Excavating performed on the Project and correctly deducted from the Subcontract balance all expenses it paid on Grady's Excavating's behalf under both the Subcontract's provisions and Arizona Revised Statutes ("A.R.S.") § 34-221(I). The court granted judgment in favor of Alliance and awarded Alliance $300,000 in attorney's fees and $13,559.69 in taxable costs. Grady's Excavating timely appealed and we have jurisdiction pursuant to A.R.S. sections 12-120.21(A)(1) and -2101(A)(1), (5).

## DISCUSSION

¶10        Grady's Excavating argues the superior court erred by (1) finding that Alliance had paid Grady's Excavating in full; (2) deciding the Prompt Pay Act did not apply to the parties; (3) denying Grady's Excavating relief under the Little Miller Act; (4) awarding attorney's fees to Alliance; and (5) denying Grady's Excavating's Motion for New Trial and/or *Additur*.

¶11        We review *de novo* any questions of law, including statutory application and interpretation, interpretation of a contract, or determination of whether contractual language is susceptible to multiple interpretations to justify admissibility of extrinsic evidence. *Kennedy v. Lodge*, 230 Ariz. 548, 549, ¶ 6 (2012); *Calisi v. Unified Fin. Servs., LLC*, 232 Ariz. 103, 106, ¶ 13 (App. 2013); *Town of Marana v. Pima County*, 230 Ariz. 142, 147, ¶ 21 (App. 2012). We will accept the superior court's factual findings, "unless they are clearly erroneous," *Calisi*, 232 Ariz. at 106, ¶ 13, which occurs only where no substantial evidence supports it. *See Visco v. Universal Refuse Removal Co.*, 11 Ariz. App. 73, 75 (1969). We view the evidence in the light most favorable to sustaining the superior court's judgment, *Great W. Bank v. LJC Dev., LLC*, 238 Ariz. 470, 473, n.1 (App. 2015), upholding it if it is correct for any reason. *Citibank (Ariz.) v. Van Velzer*, 194 Ariz. 358, 359, ¶ 5 (App. 1998). We do not reweigh conflicting evidence or substitute our judgment for that of the superior court. *Great W. Bank*, 238 Ariz. at 478, ¶ 22. Only the trier of fact resolves conflicts in evidence. *Sandretto v. Payson Healthcare Mgmt., Inc.*, 234 Ariz. 351, 359, ¶ 24 (App. 2014).

## A.        Alliance Did Not Breach the Subcontract.

¶12        Grady's Excavating contends Alliance should have paid Grady's Excavating additional sums under the Subcontract because Alliance accepted Grady's Excavating's performance as satisfactory, and

Alliance did not prove it properly accounted for offset payments made on behalf of Grady's Excavating to employees and other parties or for insurance costs. Grady's Excavating further argues Alliance was required to have its own employees.

¶13        "When interpreting an agreement, the court may always consider the surrounding circumstances and 'the context in which it was made.'" *Miller v. Hehlen*, 209 Ariz. 462, 466, ¶ 12 (App. 2005) (quoting *Smith v. Melson, Inc.*, 135 Ariz. 119, 122 (1983)). "[P]arol evidence may be used to explain [ambiguity in an agreement], but . . . it may not be used to change, alter or vary the express terms in a written agreement." *Town of Marana*, 230 Ariz. at 147, ¶ 21 (quoting *Brand v. Elledge*, 101 Ariz. 352, 358 (1966)). To assess competing contractual interpretations, the court should consider "the offered evidence and, if [it] finds that the contract language is reasonably susceptible to the interpretation asserted by its proponent, the [parol] evidence is admissible to determine the meaning intended by the parties." *Id.* (quoting *Taylor v. State Farm Mut. Auto. Ins. Co.*, 175 Ariz. 148, 154 (1993)).

¶14        The Subcontract specified Grady's Excavating would "furnish all labor, materials, (EXCLUDING ASPHALT) and equipment necessary" to grade/pave/drain the road and build its concrete headwalls according to the Subcontract's Schedule A. *See Taylor*, 175 Ariz. at 153 (a court is obligated to enforce the agreement according to the parties' intent proven by credible evidence, although the parties used contractual language of specific meaning distinct from the words' ordinary meaning). Schedule A specifically divided the Project between Alliance, Grady's Excavating, and other subcontractors, stating Grady's Excavating would perform "41% of [the] total contract" and Alliance's share was "$386,642.57 plus payrolls." The Subcontract further expressly deducted Alliance's payments of "Any and All Payrolls and Expenses" on behalf of Grady's Excavating from the total of Grady's Excavating's part of the Subcontract amount. The Subcontract also authorized Alliance to deduct from Grady's Excavating's Subcontract amount any payments it incurred to protect its performance of the Project due to Grady's Excavating's failures to pay third parties. Schedule A reflected the parties' understanding that the County required Alliance to have employees on payroll. The parties testified Alliance was to be reimbursed for any payments to Grady's Excavating's employees, and the course of performance reflected that understanding. The parties communicated with each other about the deductions before and during the Project.

**¶15** The superior court determined Alliance did not have its own internal payroll costs related to Grady's Excavating's scope of work and that all labor expenses were to be paid by Grady's Excavating.[3] Because substantial evidence in the record supports the superior court's findings that Grady's Excavating's employees did not become Alliance's employees, and because the evidence submitted did not contradict the terms of the contract but assisted in interpreting it, we find no error in its ruling. *See Town of Marana*, 230 Ariz. at 147, ¶ 21. We also agree with the superior court's interpretation of the Subcontract. *See Calisi*, 232 Ariz. at 106, ¶ 13 (we review interpretation of a contract *de novo*). As such, Grady's Excavating failed to meet its burden of proof that Alliance breached the Subcontract, and no burden shifted to Alliance to prove "offsets."[4]

**¶16** Grady's Excavating argues Alliance improperly deducted insurance costs of $16,346.48 because the payment covered Alliance's own insurance for the Project, and because Grady's Excavating purchased its own insurance. However, Gardner testified Grady's Excavating failed to produce an insurance certificate as required by Section 10 of the Subcontract, forcing Alliance to pay commercial general liability insurance on Grady's Excavating's behalf. The remainder of the insurance paid by Alliance on Grady's Excavating's behalf was for workers' compensation and equipment coverage. The evidence supports the superior court's

---

[3] Grady's Excavating argues Corey Baily was Alliance's employee when Alliance paid medical expenses in the amount of $2,556.60, a cost that was improperly deducted from Grady's Excavating's Subcontract amount. However, Corey Baily was listed in an email dated November 21, 2012, from Cheryl Hopson to Gardner describing the wage scale of Grady's Excavating's employees. The record supports the superior court's finding that Alliance appropriately subtracted this cost.

[4] The terms "offset" or "setoff" are used interchangeably, and the concept is defined as a "defendant's counterdemand against the plaintiff, arising out of a transaction independent of the plaintiff's claim" or as a "debtor's right to reduce the amount of a debt by any sum the creditor owes the debtor." *Setoff*, Black's Law Dictionary (10th ed. 2014). Offset is an affirmative defense to be proven by the defendant. *See Consol. Roofing & Supply Co., Inc. v. Grimm*, 140 Ariz. 452, 457 (App. 1984). Grady's Excavating's argument based on the offset theory arises neither from a separate transaction with Alliance, nor from a debt owed by Alliance to Grady's Excavating.

finding that Alliance was justified in deducting these expenses from Grady's Excavating's Subcontract amount.[5] *See Sandretto*, 234 Ariz. at 359, ¶ 24.

**¶17**      Grady's Excavating also contends the superior court's findings of fact were insufficient in that each expense Alliance paid on behalf of Grady's Excavating was not individually described. Because a court's factual findings are to enable an appellate court to effectively examine the basis for the superior court's decision, only findings of the ultimate facts are required for an effective review, without the need to "bolster them by subsidiary findings on evidentiary matters upon which such ultimate facts are based." *Gilliland v. Rodriquez*, 77 Ariz. 163, 167 (1954); *Ruben M. v. ADES*, 230 Ariz. 236, 241, ¶ 25 (App. 2012); *In re U.S. Currency in Amount of $26,980.00*, 199 Ariz. 291, 294, ¶ 7 (App. 2000); *see also* Ariz. R. Civ. P. 52(a). Here, the court satisfied the requirements of Rule 52, because it provided "the essential and determinative facts on which the conclusion was reached." *See Miller v. Bd. of Sup'rs of Pinal County*, 175 Ariz. 296, 300 (1993).

**B.**    **Arizona's Prompt Pay Act Does Not Apply to a Public Construction Contract.**

**¶18**      Grady's Excavating argues the superior court improperly granted summary judgement in favor of Alliance regarding the application of the Prompt Pay Act because "[n]othing in the Prompt Pay Act precludes it from applying to a private subcontract agreement between a private subcontractor and private general contractor who is working on a public job."

**¶19**      To support their position, Grady's Excavating argues A.R.S. § 32-1129.02(B) governs this case. However, § 32-1129.06 expressly states: "Sections 32-1129.01, *32-1129.02*, 32-1129.04 and 32-1129.05 do not apply to this state or political subdivisions of this state." A.R.S. § 32-1129.06 (emphasis added); *see Zumar Indus., Inc. v. Caymus Corp.*, 778 Ariz. Adv.

---

[5]    Grady's Excavating argued Alliance did not pay on Grady's Excavating's behalf other expenses totaling $6,743.39, which were spent predominantly on hauling asphalt and on fuel. However, Cheryl Hopson testified that the contract did not specifically allocate trucking and hauling expenses to Alliance. The record supports the superior court's finding Alliance properly deducted these expenses.

Rep. 16, ¶¶ 11–12 (App. 2017) (absent from the definition of "owner," a concept around which the Prompt Pay Act is framed, is "any form of government, government agency, or political subdivision"); *see also State v. Gomez*, 212 Ariz. 55, 61, ¶ 35 (2006) ("In construing statutes, we apply their plain language unless doing so would lead to an absurd, illegal, or unconstitutional result."). The definitions in § 32-1129 tie subcontractors to the construction (prime) contract and its owner. *See* A.R.S. § 32-1129.

**¶20** Because there is no dispute that (1) the owner of the contract is Yavapai County; (2) Yavapai County is a political subdivision of this state; and (3) Alliance and Grady's Excavating entered the Subcontract for the construction of the Verde Valley School Road, a public project, and because the plain language of § 32-1129.06 exempts its application to public projects, we affirm the superior court's grant of summary judgment to Alliance. *See* Ariz. R. Civ. P. 56(a); *Zumar Indus., Inc.*, 778 Ariz. Adv. Rep. at ¶¶ 11–12.

## C. Alliance Did Not Fail to Timely Pay under the Little Miller Act.

**¶21** Grady's Excavating further contends the superior court erred by ruling Grady's Excavating failed to prove Alliance violated A.R.S. § 34-221 because Alliance accepted all of Grady's Excavating's pay applications. The court, however, found Alliance "lawfully deducted payments from the subcontract for equipment, materials, vendors, and subcontractors pursuant to A.R.S. § 34-221(I)." Because we have already determined the superior court was correct in finding Alliance properly deducted payments made on Grady's Excavating's behalf pursuant to the Subcontract, we do not reach Grady's Excavating's argument based on § 34-221. *See Van Velzer*, 194 Ariz. at 359, ¶ 5 ("We will uphold the trial court's decision if it is correct for any reason.").

## D. Grady's Excavating's Motion for a New Trial Was Properly Denied.

**¶22** Grady's Excavating challenges the superior court's denial of its motion. Grady's Excavating argues it proved Alliance breached its Subcontract with Grady's Excavating. We will reverse the superior court's denial of a motion for new trial and/or *additur* "only if it reflects a manifest abuse of discretion given the record and circumstances of the case." *Styles v. Ceranski*, 185 Ariz. 448, 450 (App. 1996); *see also Warne Investments, Ltd. v. Higgins*, 219 Ariz. 186, 194, ¶ 33 (App. 2008). Given the extensive record supporting the superior court's findings of fact, we find the court did not abuse its discretion when it denied Grady's Excavating's motion.

### E.     Attorney's Fees in Superior Court.

**¶23**     Grady's Excavating contests the superior court award of Alliance's reasonable attorney's fees and costs "under the Subcontract." Grady's Excavating contends the indemnity provision of the Subcontract's Section 8 does not apply because it is not "an attorneys' fees provision" and Section 26 of the Subcontract does not apply because it authorizes Alliance to recover attorney's fees only "[i]f it shall be necessary for [Alliance] to bring suit," but not for a lawsuit's defense.

**¶24**     Because the superior court stated it awarded fees and costs "under the Subcontract," but did not specify whether it found the basis for its ruling in section 8, section 26, or A.R.S. § 12-341.01, we do not reach the issues related to sections 8 and 26, but focus merely on the application of § 12-341.01.[6] *See Bennett Blum, M.D., Inc. v. Cowan*, 235 Ariz. 204, 206, ¶ 5 (App. 2014) (attorney's fees award will be affirmed "if it was appropriate under any of the authorities relied upon by the proponent"); *see also Skydive Ariz., Inc. v. Hogue*, 238 Ariz. 357, 369, ¶ 50 (App. 2015) (appellate court upholds the superior court's ruling "if it has 'any reasonable basis'"). "We review the grant or denial of attorney fees for an abuse of discretion." *Motzer v. Escalante*, 228 Ariz. 295, 296, ¶ 4 (App. 2011); *see* A.R.S. § 12-341.01 (the superior court has broad discretion in determining the amount of the fee, but it "may not exceed the amount paid or agreed to be paid"). The court abuses its discretion when "no evidence . . . supports [its] conclusion, or the reasons given by the superior court [are] 'clearly untenable, legally incorrect, or amount to a denial of justice.'" *In re Estate of Long*, 229 Ariz. 458, 464, ¶ 22 (App. 2012).

**¶25**     Although Grady's Excavating does not dispute it had a contractual relationship with Alliance, it argues § 12-341.01 does not apply

---

[6]     Section 12-341.01(A) states:

In any contested action arising out of a contract, express or implied, the court may award the successful party reasonable attorney fees. If a written settlement offer is rejected and the judgment finally obtained is equal to or more favorable to the offeror than an offer made in writing to settle any contested action arising out of a contract, the offeror is deemed to be the successful party from the date of the offer and the court may award the successful party reasonable attorney fees. This section shall not be construed as altering, prohibiting or restricting present or future contracts or statutes that may provide for attorney fees.

because its application was expressly waived under the Prime Contract. We reject Grady's Excavating's argument because Grady's Excavating failed to raise the argument in the superior court. *See Harris v. Cochise Health Sys.*, 215 Ariz. 344, 349, ¶ 17 (App. 2007) (an argument not raised in the trial court is waived on appeal). Grady's Excavating, however, urges us to exercise our discretion and consider the waived issue because we have the authority to do so "where the facts are fully developed and the issues involve purely questions of law." *City of Sierra Vista v. Sierra Vista Wards Sys. Voting Project*, 229 Ariz. 519, 524, ¶ 20, n.8 (App. 2012). For a good reason, such as when an issue is of statewide importance, we may and will entertain arguments not raised in the superior court. *City of Tucson v. Clear Channel Outdoor, Inc.*, 209 Ariz. 544, 552, ¶ 33, n.9 (2005). Not only is an interpretation of a private contract not an issue of such magnitude, but Grady's Excavating affirmatively and repeatedly sought fees under the Subcontract and § 12-341.01 throughout the litigation below. Having successfully persuaded the court to apply § 12-341.01, albeit not in its favor, Grady's Excavating now cannot argue the court's ruling was erroneous because the Prime Contract prohibited the application of § 12-341.01. *See In re Marriage of Thorn*, 235 Ariz. 216, 224, ¶ 35 (App. 2014); *see also Schlecht v. Schiel*, 76 Ariz. 214, 220 (1953) ("By the rule of invited error, one who deliberately leads the court to take certain action may not upon appeal assign that action as error."), *abrogated in part on other grounds as recognized in A Tumbling–T Ranches v. Paloma Inv. Ltd. P'ship*, 197 Ariz. 545, 552, ¶ 23 (App. 2000). In the exercise of our discretion, we decline to disregard Grady's Excavating's waiver.

¶26 The court did not abuse its discretion by awarding attorney's fees and costs under § 12-341.01. We also affirm the amount of fees awarded as reasonable evidence supports the award. *See Long*, 229 Ariz. at 464, ¶ 22.

**F. Attorney's Fees and Costs on Appeal.**

¶27 Both parties request we award attorney's fees and costs on appeal pursuant to § 12-341.01, -342, and Arizona Rule of Civil Appellate Procedure ("ARCAP") 21. Section 12-341.01(A) provides a court with discretion to award reasonable attorney's fees to a prevailing party "[i]n any contested action arising out of a contract." Grady's Excavating, however, argues the Prime Contract's attorney's fees provision prevents Alliance from recovering *any* attorney's fees pursuant to § 12-341.01. Although Grady's Excavating waived this argument in the superior court, *see Harris*, 215 Ariz. at 349, ¶ 17, such a waiver does not preclude our consideration of the Prime Contract's provision on appeal because it forms

a basis to a separate claim for attorney's fees. *See Bobrow v. Bobrow*, 241 Ariz. 592, 598, ¶¶ 30–32 (App. 2017).

**¶28**         Assuming, without deciding, that § 12-341.01 applies, we exercise our discretion and decline to award attorney's fees on appeal to either party. As the prevailing party, we award Alliance costs incurred on appeal upon compliance with ARCAP 21.

## CONCLUSION

**¶29**         For the forgoing reasons, we affirm the superior court's judgment in favor of Alliance, including its award of attorney's fees and costs. We award Alliance costs incurred on appeal upon compliance with ARCAP 21.

